IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TYEE R. BRISBANE | ) |
| | ) |
| v. | ) NO. 3:19-cv-00884 |
| | ) |
| THE METROPOLITAN GOVERNMENT | ) |
| OF NASHVILLE AND DAVIDSON | ) |
| COUNTY, TENNESSEE | ) |

**TO:** Honorable Eli J. Richardson, District Judge

## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered August 25, 2021 (Docket Entry No. 47), this *pro se* case was referred to the Magistrate Judge for pretrial proceedings under Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 636(b)(1)(A) and (B) and for recommended disposition of Defendant's motion for summary judgment (Docket Entry No. 42).

For the reasons set out below, the undersigned respectfully recommends that the motion for summary judgment be granted and that this case be dismissed.

### I. FACTUAL BACKGROUND[1]

Tyee R. Brisbane ("Plaintiff") is a resident of Hendersonville, Tennessee. Sometime in 2007, he began working as a court officer for Judge Cheryl Blackburn, an elected judicial

---

[1] The background facts are drawn primarily from Plaintiff's deposition testimony and from Defendant's supporting exhibits (Docket Entry Nos. 43-1 through 43-10), which were submitted in support of Defendant's motion. Plaintiff has not contested this supporting evidence, and the Court has viewed the evidence and drawn all reasonable inferences therefrom in the light most favorable to Plaintiff. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

1

official who serves as a criminal court trial judge for the 20th Judicial District of Tennessee, a district which encompasses Davidson County, Tennessee. It is not apparent from the record before the Court what employment Plaintiff had prior to working as a court officer for Judge Blackburn or what circumstances led him to the court officer job, but it is undisputed that Judge Blackburn selected Plaintiff to work on her staff as a court officer. While working as a court officer, Plaintiff was solely under the supervision of Judge Blackburn, and his schedule, responsibilities, and day-to-day duties were directed by her. These duties consisted primarily of being present in the courtroom and maintaining order and security in the courtroom in accordance with Judge Blackburn's rules, preferences, and protocols.

Although it is not entirely clear from the record, it appears that Plaintiff's salary was paid either in full or in some combination by the State of Tennessee and/or the Metropolitan Government of Nashville and Davidson County ("Metro"). It further appears that Plaintiff's job benefits and the human resources aspects of his job were jointly administered by Metro and the 20th Judicial District. While working as a court officer, Plaintiff was subject to some Metro guidelines and training, although to what extent is not clear from the record.

Sometime during the weekend of March 1-3, 2019, Plaintiff began to feel unwell, experiencing an elevated heart rate and high blood pressure, and he sought medical assistance at a clinic. Plaintiff did not appear for work the following Monday but communicated his situation to Judge Blackburn by e-mail on the morning of March 4 2019, at which time he was asked by Judge Blackburn to provide a doctor's excuse. Although Plaintiff did not appear for work the week of March 4-8, he and Judge Blackburn communicated by e-mail over the course of the week about his situation. Plaintiff was again asked by Judge Blackburn for the doctor's

excuse, but he did not provide it, asserting that he was unable to download the excuse because of computer problems.

Plaintiff never again returned to work. On or about March 10, 2019, he flew to New York City to visit a friend and his brother, planning to be gone the next week because the courts were closed for a judicial conference. While departing the plane in New York, Plaintiff had some type of medical event that led to him being admitted to the Elmhurst Hospital, where he stayed from March 10-18, 2019. Upon his discharge from the hospital, Plaintiff flew to his brother's residence in California so that his brother could assist him with his medical situation, which Plaintiff asserts also included adverse reactions to the medication he was given and some paralysis in his arm. Plaintiff stayed in California until sometime in April.

During the time Plaintiff was ill in March, he contends that his family attempted to communicate with Judge Blackburn about his situation, but the nature, frequency, and success of these communications is not clear from the record. On March 20, 2019, Plaintiff, apparently through his brother, submitted a "Request for Family or Medical Leave" form in which he requested medical leave beginning on March 4, 2019, with an undetermined end date because Plaintiff was not "cleared" by his doctor. *See* Defendant's Exhibit 4 (Docket Entry No. 43-4). This request generated a four-page letter to Plaintiff from Tammy Hawkins ("Hawkins"), the HR Coordinator for the 20th Judicial District state trial courts, in which she explained the requirements for taking leave under the Family Medical Leave Act ("FMLA") and provided to him several forms, including a "Certification of Health Care Provider for Employee's Serious Health Condition" form ("Certification Form). *See* Defendant's Exhibit 5 (Docket Entry

No. 43-5).[2] Plaintiff was informed that he must return a fully completed and signed Certification Form to Hawkins by April 5, 2019, or the requested leave could be delayed or denied, or he could face corrective or disciplinary action. *Id*.

Although Plaintiff returned two Certification Forms, neither was properly and fully completed. The first was not signed by a health care provider and the section that was to be completed by a health care provider was filled in by Plaintiff. *See* Defendant's Exhibit 7 (Docket Entry No. 43-7). The second was signed by Dr. Rumana Rahmani on March 22, 2019, but merely noted that she had treated Plaintiff for the duration of his stay at the Elmhurst Hospital and the "Amount of Leave Needed" section of the form was not completed. *See* Defendant's Exhibit 3 (Docket Entry No. 43-3). Plaintiff e-mailed Hawkins on April 5, 2019, with several questions about his leave request and what would occur if the Certification Form was not completed in time. *See* Defendant's Exhibit 2 at 7. Hawkins responded that "your FMLA request will most likely be denied" if the Certification Form was not completed on time, that the "hospital letter" was sufficient to excuse him from work on the days that he was in the hospital, and that his return to work would be up to his supervisor if FMLA was denied. *Id*.

Plaintiff emailed Judge Blackburn on the evening of April 5, 2019, explaining the difficulty he was having getting the Certification Form completed as required for his FMLA request and asking "what are my option to maintain employment?" It is not clear from the record whether Judge Blackburn responded to this email. *Id*. at 8.

---

[2] It is not clear from the record how Plaintiff obtained the March 20, 2019, letter and attachments from Hawkins given that he was either in New York or California at the time they were mailed to him at his Tennessee address. If they were attached to an e-mail that was sent to him, the e-mail is not a part of the record.

4

Plaintiff emailed Hawkins again on April 9, 2019, about his situation and that he was "still waiting to speak to Dr.," *id*. at 9, and further had a phone conversation with her on or about this date in which he asserts that she stated he was facing termination because of his inability to have the Certification Form fully completed. Plaintiff's request for FMLA leave was not approved on April 9, 2019, *see* Defendant's Exhibit 9 (Docket Entry No. 43-9), and Plaintiff was then issued a termination letter from Hawkins stating that his employment was being terminated effective April 10, 2019, but that he received paid leave though March 22, 2019. *See* Defendant's Exhibit 10 (Docket Entry No. 43-10).[3]

## II. COMPLAINT AND PROCEDURAL BACKGROUND

On October 4, 2019, Plaintiff, by and through counsel, filed this lawsuit against Metro. Seeking compensatory and punitive damages, Plaintiff alleges that he was the victim of unlawful employment discrimination and retaliation when he was denied FMLA leave and terminated from his employment. Specifically, Plaintiff, who is African-American, claims that: (1) he suffered disability discrimination and harassment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*., and the Tennessee Disability Act ("TDA"), T.C.A. §§ 8-50-103, *et seq*. (Count I); (2) he suffered interference and retaliation in violation of the FMLA, 29 U.S.C. §§ 2601, *et seq*., when he was terminated from employment after requesting FMLA leave (Count II); and, (3) he suffered racial discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"), and the

---

[3] Again, it is not clear from the record how Plaintiff received this termination letter.

5

Tennessee Human Rights Act ("THRA"), T.C.A. §§ 4-21-101, *et seq.*, when he was denied FMLA leave and terminated from employment (Count III).[4]

Defendant filed an answer (Docket Entry No. 20), an initial case management conference was conducted, and a case management order and amended case management order were entered that set deadlines for pretrial activity in the case. *See* Docket Entry Nos. 18 and 25. Plaintiff's counsel was permitted to withdraw from the case on February 16, 2021, and Plaintiff, who did not obtain new counsel, has proceeded *pro se* thereafter. *See* Docket Entry Nos. 38 and 41. Upon the filing of Defendant's motion for summary judgement, the jury trial date in the case was cancelled. Other than the Defendant's motion for summary judgment, there are no other motions pending in the case.

### III. MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Defendant moves for summary judgment on all claims under Rule 56 of the Federal Rules of Civil Procedure, raising two main arguments. First, Defendant argues that Plaintiff was not an employee of Metro as defined under Title VII, FMLA, THRA, and thus Metro cannot be held liable for the claims alleged under these statutes. Second, Defendant argues that Plaintiff's claims fail on the merits because (1) he does not dispute that his employment was terminated because he was absent for over four weeks without providing a sufficient medical provider certification and testified that he has no reason to believe the reason for his termination was a lie and (2) he was not entitled to FMLA leave given his failure to provide a sufficient medical provider certification. In support of its motion, Defendant relies upon: (1) a statement

---

[4] Plaintiff also asserted a claim under 42 U.S.C. § 1981 but this claim has been dismissed. *See* Order and Memorandum entered February 7, 2020 (Docket Entry No. 17).

6

of undisputed material facts ("SUMF") (Docket Entry No. 44); (2) excerpts from Plaintiff's deposition transcript (Docket Entry No. 43-1); and (3) copies of e-mails, letters, health care forms, and FMLA forms (Docket Entry Nos. 43-2 through 43-10).

Plaintiff's response to the motion consists of two, unsworn narrative statements (Docket Entry Nos. 48 and 49), in which he: (1) notes that he is proceeding *pro se*; (2) sets out examples of his employment interactions with Metro as support for a conclusion that Metro should be viewed as his employer; (3) asserts that doctors did sign his medical leave forms and recommend that he get time off work for recovery; and, (4) argues that he is protected from racial discrimination and that his termination was "a very and clear racist agenda." *See* Docket Entry No. 49 at 1. Plaintiff has not filed a response to Defendant's SUMF. Attached to Plaintiff's response is an unsworn, "victim witness statement," in which Plaintiff lists some of the hardships he endured after losing his job and outlines a series of recent events as examples of his belief that paid racist militia groups are attempting to poison and contaminate his food. *See* Docket Entry No. 48 at 5-9.

Plaintiff has also filed a sur-reply (Docket Entry No. 51), which the Court views as part of his overall response. In the sur-reply, Plaintiff contends that he has supported his opposition to summary judgment with clear legal facts and arguments. He further contends that he has presented a copy of a physician's "excuse note" from Action Urgent Care in California, dated April 8, 2019, excusing him from work from April 8-11, 2019, and stating that he was being actively treated at the time. *Id*. at 8. He contends that this shows that he was terminated while he was still under a doctor's care.

7

## IV. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The moving party has the burden of showing the absence of genuine factual disputes. *Anderson*, at 249-50; *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman,* 901 F.3d at 628. The nonmoving party "is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her claims; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000). In

8

doing so, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

## V. ANALYSIS

In light of Plaintiff's *pro se* status, the Court has given Plaintiff a great measure of leeway in the consideration of his response to the motion for summary judgment. In the end, however, his response is not sufficient to rebut Defendant's request for summary judgment. Defendant raises a valid coverage defense to his Title VII and FMLA claims. Additionally, there is such an overall lack of evidence in the record supporting Plaintiff's allegations of unlawful conduct by Defendant that no reasonable jury could find in his favor on his claims. Any issues of fact that exist do not rise to the level of genuine issues of material fact that must be resolved at trial, and Defendant is entitled to summary judgment on all claims.

A. Plaintiff's response

Like many *pro se* parties who respond to a motion for summary judgment, Plaintiff has attempted to respond to Defendant's motion and to support his case as best possible as a non-attorney. Nonetheless, his response suffers from significant shortcomings that cannot be disregarded merely because Plaintiff is proceeding *pro se*.

First, his response contains factual assertions that are neither supported by evidence that is already in the record and to which he cites nor supported by his own affidavit or a declaration that is sworn under the penalty of perjury. Unsworn statements of fact cannot be considered as evidence rebutting a motion for summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970); *Worthy v. Michigan Bell Tel. Co.*, 472 Fed.App'x 342, 343 (6th Cir. 2012);

9

*Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010). Accordingly, while it is proper to consider Plaintiff's response as his argument against the grant of summary judgment, the unsupported factual assertions contained in his response cannot be viewed as evidence that supports his claims.

Second, Plaintiff has not set forth any actual legal arguments that are responsive to Defendant's arguments for the dismissal of his disability claim. Although Plaintiff does refer in his response to the Fourteenth Amendment and does provide the names of two cases that he contends support his case, these minimal references fail to present an argument.[5] While the Court does not expect a *pro se* litigant to set forth the type of legal analysis that would be expected from an attorney, the Court's role is not to make legal arguments on behalf of Plaintiff or to *sua sponte* find ways to defeat the motion on his behalf.

Finally, Plaintiff has not filed a response to Defendant's SUMF as required by Local Rule 56.01(c). Local Rule 56.01(f) provides that when a party fails to respond to a moving party's statement of material facts, "the asserted facts shall be deemed undisputed for the purposes of summary judgment." The facts set forth in Defendant's SUMF are therefore undisputed for the purposes of reviewing the motion for summary judgment. These facts are as follows:

1. Hon. Cheryl A. Blackburn, Twentieth Judicial District Circuit Court, is an elected official;

2. Judge Blackburn appointed Plaintiff Tyee Brisbane to serve as her Court Officer;

3. Brisbane reported directly to Judge Blackburn;

---

[5] Plaintiff has not brought a claim in this case under the Fourteenth Amendment and may not raise new claims as part of his response to the motion for summary judgment. Additionally, although Plaintiff provides the "names" of two cases, the information that he has provided about these two cases is so minimal that the Court is unable to locate the cases.

4. Judge Blackburn provided Brisbane with on-the-job training;

5. Judge Blackburn dictated Brisbane's schedule;

6. Brisbane performed his job duties according to Judge Blackburn's direction, rules, and preferences;

7. Brisbane's essential job functions included maintaining order in the courtroom pursuant to Judge Blackburn's rules and preferences;

8. The Metro Government paid a portion of Brisbane's salary and administered his benefits. The State of Tennessee also paid a portion of Brisbane's salary; and

9. The decision as to whether to terminate Brisbane's employment following the denial of his FMLA leave was Judge Blackburn's.

*See* Docket Entry No. 44.

B. Coverage under Title VII and the FMLA

Defendant raises a valid argument that Plaintiff falls outside the protections of Title VII and the FMLA because he was a member of the personal staff of Judge Blackburn, an elected official. Plaintiff fails to show a factual or legal basis that rebuts this defense. Defendant is therefore entitled to summary judgment on Plaintiff's claims brought under Title VII and the FMLA.

The protections of Title VII do not apply to every working individual because the statute, by its very language, excludes some individuals from the scope of its coverage. One such exclusion arises if an individual worker does not fall within the definition of an employee, which Title VII defines as:

> an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such

11

officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.

42 U.S.C.A. § 2000e(f); *Birch v. Cuyahoga Cty. Prob. Ct.*, 392 F.3d 151, 157-58 (6th Cir. 2004). In *Birch,* the Sixth Circuit found that a member of an elected state judge's personal staff was not an employee for Title VII purposes and could not pursue a discrimination claim under Title VII. 392 F.3d at 159 (6th Cir. 2004). The Court in *Birch* set out a non-exhaustive list of six factors pertinent to determining whether an individual is part of the "personal staff" of an elected official:

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Birch*, 392 F.3d at 158.

The "personal staff" exemption and analysis under Title VII also applies to plaintiffs who seek to bring claims under the FMLA. *West v. Wayne Cty.*, 672 Fed.App'x 535, 538-40 (6th Cir. 2016) (chief of staff and chief deputy clerk to county clerk was not entitled to bring FMLA claim because he fell within the "personal staff" exemption); *Horen v. Cook*, 546 Fed.Appx. 531, 533-34, 537 (6th Cir. 2013) (law clerk/staff attorney to county court judge was not entitled to bring FMLA claim because she fell within "personal staff" exemption).

Given the undisputed facts of this case, Defendant has shown that Plaintiff was on the personal staff of Judge Blackburn in accordance with the factors set out in *Birch.* Although Plaintiff points out in his response some human resources aspects of his job in which Metro was

involved, he has not set forth any evidence supporting a conclusion that the personal staff exemption does not apply to him. Plaintiff is exempt from coverage under Title VII and the FMLA.

C. Racial Discrimination Claim under Title VII and the THRA

Plaintiff has raised serious allegations of racial discrimination. He alleges that he was "treated poorly," that he was denied FMLA leave while the requests of non-African American employees for FMLA leave were approved, and that he was terminated because of his race. *See* Complaint at ¶¶ 57-66. Even if the Court assumes for the purposes of determining the motion for summary judgment that Plaintiff is covered by Title VII and the THRA,[6] Defendant is entitled to summary judgment on the claim of racial discrimination because there is no evidence in the record to support the claim.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 67 (1986). The protections of the THRA against racial discrimination essentially track those of Title VII. *Chattman v. Toho Tenax Amer., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012); *Mullins v. Goodyear Tire & Rubber Co.*, 291 Fed.App'x.

---

[6] Defendant also raises an argument that Plaintiff is exempt from coverage under the THRA because of the personal staff exemption. Because there is no legal precedent directly on point for this argument and because Plaintiff's racial discrimination claim is clearly subject to dismissal on the merits, the Court declines to address Defendant's THRA argument.

13

744, 745 n.1 (6th Cir. 2008) ("The THRA is a state law analogous to Title VII and the statues are analyzed identically.").

As the party bringing a claim of racial discrimination, it is Plaintiff's ultimate burden to prove his claim. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). A racial discrimination claim under Title VII must be supported by either direct evidence of racial discrimination or by circumstantial evidence that raises an inference of racial discrimination. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Mere speculation of racial discrimination is not sufficient. There must be evidence, which if believed, is sufficient to support a conclusion by a reasonable jury that Plaintiff was subjected to unlawful racial discrimination.

In the instant case, Defendant has correctly pointed out that there is a complete lack of evidence that supports any claim of racial discrimination. Plaintiff has not set out evidence that he was subjected to racial slurs, jokes, or comments, or otherwise endured a racially hostile work environment and thus has not supported his allegation that he was treated poorly or was racially harassed. Further, Plaintiff has not offered direct evidence[7] that he was denied FMLA leave because of his race, nor has he presented circumstantial evidence supporting such a claim. Specifically, Plaintiff has not provided evidence that non-African American employees who were similarly situated to him had their FMLA leave requests granted under circumstances that would suggest that his leave request was denied because of his race. In fact, there is absolutely no evidence in the record about the leave requests of any person other than Plaintiff. To the extent that Plaintiff contends that non-African American co-workers were treated more

---

[7] Direct evidence is evidence, which if believed, requires no inferences to conclude that unlawful conduct was a motivating factor in the challenged action. *Abbott v. Crown Motor*

14

favorably, it is his burden to provide actual evidence supporting this contention. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992). Plaintiff has not provided such evidence.

With respect to his termination, Plaintiff has similarly offered no direct or circumstantial evidence supporting a reasonable conclusion that his employment was terminated because of his race. Indeed, the entirety of the evidence before the Court shows that Plaintiff's termination was linked to his inability to provide sufficient medical documentation that excused his extended absence from work and that supported his request for FMLA leave. There is simply no evidence before the Court upon which any reasonable jury could conclude that an unlawful racial animus was a motivating factor in the termination decision.

In the end, Plaintiff has not provided any actual evidence supporting his serious allegations that he was the victim of racial discrimination. While he may believe that he was discriminated against, his own subjective and unsupported belief that racial discrimination occurred is simply not sufficient to support his claim and is not sufficient to rebut the motion for summary judgment. *See Johnson v. Interstate Brands Corp.*, 351 Fed.App'x. 36, 42, 2009 WL 3583397 at *5 (6th Cir. Nov.3, 2009) ("[a] plaintiff's conclusory allegations and subjective beliefs are not a sufficient basis to deny summary judgment."); *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment."); *Jordan v. Mathews Nissan, Inc.*, 2021 WL 1967562 at *17 (M.D.Tenn. May 17, 2021) (vague references to white employees generally being treated better is not sufficient to support claim of unequal treatment). Defendant is entitled to summary judgment on this claim because no reasonable trier of fact could find in favor of Plaintiff based on the record of evidence that is before the Court.

---

*Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

D. FMLA Claim

Because the Court finds that dismissal of Plaintiff's FMLA claim is warranted for the reason set out *supra* at Section V.B., it is unnecessary to address Defendant's alternative argument for dismissal on the merits. Nonetheless, the Court briefly notes that any FMLA claim pursued by Plaintiff suffers from a lack of supporting evidence that would be fatal to the claim.

Plaintiff's complaint sets out both an interference/entitlement theory and a retaliation theory, which are generally the two types of claims that may be pursued under the FMLA. *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 506-07 (6th Cir. 2006). Under either avenue, Plaintiff fails to provide supporting evidence that would permit a reasonable jury to find in his favor.

An employer is entitled to require proper certification prior to granting FMLA leave. 29 U.S.C. § 2613(a). Evidence of significant deficiencies in an employee's certification form is a sufficient basis to support the denial of FMLA leave and to defeat an entitlement/interference claim brought based upon that denial. *See Hoge v. Honda of America Mfg., Inc.,* 384 F.3d 238, 244 (6th Cir. 2004); *Harrington v. Boysville of Michigan, Inc.*, 145 F.3d 1331 (6th Cir. 1998); *Carpenter v. Permanente*, 2006 WL 2794787 at *12 (N.D.Ohio Sept. 27, 2006). The undisputed evidence before the Court shows that Plaintiff failed to return to Hawkins a satisfactory Certification Form that supported his request for FMLA leave. Indeed, it is undisputed that neither of the two Certification Forms returned by Plaintiff were fully and properly filled out.[8] Indeed, Plaintiff's April 5, 2019, e-mail to Hawkins indicates that he was

---

[8] Although it is not clear from the record, Plaintiff testified that he was informed by Hawkins at some point after returning his first Certification Form that the form was not sufficient. *See* Plaintiff's Deposition at 88.

16

aware that the returned forms were deficient and of his need to provide a satisfactory form. Plaintiff has not set forth any argument or evidence showing that what he provided to Hawkins was sufficient under 29 U.S.C. § 2613(b) to support his request for FMLA leave or that his rights under the FMLA were otherwise violated.

There is likewise a lack of any evidence in the record that would support a finding in favor of Plaintiff on his retaliation claim. It is undisputed that Plaintiff received relief at his work for the time that he provided medical documentation supporting his absence from work, as evidenced by the fact that he was excused from work for the duration of his hospitalization and that he was given paid leave through March 22, 2019.[9] *See* Docket Entry Nos. 43-2 at 7 and 43-10. It is further undisputed that Plaintiff failed to return to Hawkins a satisfactorily completed Certification Form that covered the several weeks that he was absent from work after March 19, 2021, when he was released from the hospital and flew to California. There is also no evidence in the record that documents any medical treatment Plaintiff received for the period of March 19, 2019, to April 8, 2019, or any evidence showing that any such medical documentation was provided to Hawkins. Thus, at the time of his termination on April 10, 2019, Plaintiff had been absent from his work for a period of several weeks without either approved FMLA leave or a medical excuse.[10] Plaintiff has offered no evidence that would

---

[9] Although Plaintiff's hospitalization ended on March 18, 2019, he was apparently given an extra four days of paid leave.

[10] Plaintiff points to a note from Action Urgent Care, stating that he should be excused from "school/work" from April 8, 2019, to April 11, 2019, and stating that he "is being actively treated" as evidence of his ongoing treatment. However, this note is essentially a form note and provides no evidence of any treatment Plaintiff received between March 18, 2019, and April 8, 2019. Thus, it has no probative value concerning the weeks that he was absent from work.

17

support a reasonable finding that these were not the reasons for his termination but were instead a pretext for retaliating against him because he sought FMLA leave.

E. Disability Discrimination Claim

In his complaint, Plaintiff sets out a claim of disability harassment and discrimination under both federal and state law. Defendant points out that, when questioned at his deposition, Plaintiff could not explain or point to the factual basis for his disability discrimination claim. *See* Defendant's Memorandum at 19-23. Defendant argues that Plaintiff has effectively abandoned his disability discrimination claims. *Id.* In the face of Defendant's motion, Plaintiff has not offered any evidence or argument about his disability discrimination claim. In fact, at no point in his response in opposition does he even address this claim or Defendant's abandonment argument. Accordingly, the Court finds that this claim has been abandoned by Plaintiff.

# R E C O M M E N D A T I O N

For the reasons set out above, it is respectfully RECOMMENDED that the motion for summary judgment (Docket Entry No. 42) of Defendant Metropolitan Government of Nashville and Davidson County be GRANTED and that this action be DISMISSED WITH PREJUDICE as to all claims.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the

District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

    Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge

19

Case 3:19-cv-00884   Document 55   Filed 12/01/21   Page 19 of 19 PageID #: 308