IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TYEE R. BRISBANE, | ) | |
| Plaintiff, | ) ) | |
| | ) | NO. 3:19-cv-00884 |
| v. | ) ) | JUDGE RICHARDSON |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a Report and Recommendation ("R&R") from the Magistrate Judge recommending that Defendant's Motion for Summary Judgment (Doc. No. 42) be granted and that this case be dismissed. Plaintiff has filed Objections to the Magistrate Judge's R&R (Doc. No. 61, "Objections")[1], and Defendant has filed a Response (Doc. No. 62).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3), the Court has reviewed *de novo* the Report and Recommendation, Plaintiff's Objections to the R&R, Defendant's Response, and the file.

---

[1] Though Plaintiff's Objections were not filed on the docket until January 18, 2022, eight days after the (extended) deadline for filing Objections to the R&R, the Court will consider them (particularly because this *pro se* Plaintiff likely mailed his handwritten Objections in advance of January 18, 2022).

# BACKGROUND[2]

In this action, *pro se* Plaintiff Tyee R. Brisbane filed a Complaint against Defendant the Metropolitan Government of Nashville and Davidson County ("Metro") alleging: i) disability discrimination under the Tennessee Disability Act ("TDA") and the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"); ii) interference and retaliation under the Family and Medical Leave Act ("FMLA"); iii) race discrimination under Title VII of the Civil Rights Act of

---

[2] Plaintiff did not respond to Defendant's Concise Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment (Doc. No. 44, "Statement of Facts"), and he responded to the summary judgment motion with two briefs, neither of which contain citations to the record to support Plaintiff's factual allegations (Doc. Nos. 48 and 49). Plaintiff also filed (without requesting or receiving permission to do so) a response (Doc. No. 51) to Defendant's reply (*i.e.*, a "sur-reply"), which the Court declines to consider because such a filing is not allowed under the Local Rules, (especially in the absence of a motion for leave to file a sur-reply).

While it is true that "[p]ro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers and should therefore be liberally construed," *Williams v. Curtin*, 631 F. 3d 380, 383 (6th Cir. 2011) (internal quotation marks and citation omitted), *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F. 2d 591, 594 (6th Cir. 1989). The Court must be able to ascertain a set of facts which are clearly disputed or undisputed by the parties in order to appropriately review the R&R and any Objections thereto in this matter. But the Court cannot assume the role of a litigant and create record citations supporting Plaintiff's factual allegations where there are none. To demand otherwise of courts merely because a plaintiff is *pro se* would require "courts to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F. 2d 1274, 1278 (4th Cir. 1985). Further, Local Rule 56.01(f) provides that "[i]f a timely response to a moving party's statement of material facts . . . is not filed within the time periods provided by [the Local Rules], the asserted facts shall be deemed undisputed for purposes of summary judgment." Thus, given Plaintiff's failure to respond to Defendant's Statement of Facts, the Court must accept the facts therein as undisputed for purposes of reviewing the R&R, and the Court will cite to these filings in recounting the relevant factual background herein. The Court will additionally treat as true any facts contained in the Memorandum of Law supporting Defendant's summary judgment motion that are not expressly contested by Plaintiff (Doc. No. 43). Generally, the Court does not automatically accept as true facts contained in a party's memorandum supporting a summary judgment motion. Here, however, there are a large number of fundamental facts that were not contained in Defendant's (very brief) Statement of Facts and that 1) do not appear to be contested by Plaintiff, and 2) are supported by record citations in the Memorandum of Law. In order to adequately review the R&R and Objections thereto, the Court thus finds it appropriate to rely on these (uncontested) facts in Defendant's Memorandum of Law.

1964, 42 U.S.C. § 2000e et seq. and the Tennessee Human Rights Act ("THRA"); and iv) race discrimination under 42 U.S.C. § 1981. (Doc. No. 1).

The factual allegations underlying Plaintiff's claims are sufficiently recited in the R&R and need not be repeated here in full. Plaintiff's claims arise from alleged events that took place during Plaintiff's employment as a Court Officer for Judge Cheryl Blackburn—a position obtained by Plaintiff in 2007. (Doc. No. 43 at 2). Plaintiff reported directed to Judge Blackburn, and Plaintiff's job duties were dictated by Judge Blackburn's rules and preferences. (*Id*. at 3). Plaintiff's essential job duties consisted primarily of being present in the courtroom and maintaining order and security in the courtroom. (*Id*.). As a Court Officer, Plaintiff received a portion of his salary and job benefits from Defendant Metro, and received another portion of his salary from the State of Tennessee. (Doc. No. 44 at 2).

In early 2019, Plaintiff began to suffer from a medical condition resulting in high blood pressure and an elevated heartrate. (Doc. No. 43 at 4). Plaintiff communicated via e-mail with Judge Blackburn to inform her that he had to call out sick the week of March 4, 2019, and Judge Blackburn asked Plaintiff to provide a doctor's note to excuse his absences. (*Id*.). Plaintiff did not provide a doctor's note at that time. (*Id*.). The next week, Plaintiff traveled to New York to visit friends during the court's judicial conference. (*Id*. at 5). While in New York, Plaintiff was admitted to the hospital for roughly one week, but did not communicate with Judge Blackburn during this time. (*Id*.). Plaintiff then traveled to San Jose, California to stay with his brother. (*Id*.).

On March 20, 2019, Plaintiff's brother submitted a Request for Family or Medical Leave form on Plaintiff's behalf, unaccompanied by a doctor's note or certification. (*Id*. at 5–6). Plaintiff submitted a certification of health care provider form on March 24, 2019, but the form

was completed by Plaintiff and not by his doctor. (*Id*. at 6). On April 3, 2019, Plaintiff submitted a second certification of healthcare provider form, but the form did not state whether Plaintiff needed continuous leave, whether Plaintiff was unable to perform any of his job functions due to his medical condition, and did not indicate the "probable duration" of his condition. (*Id*.).

On April 5, 2019, HR Coordinator Tammy Hawkins informed Plaintiff that while he was excused from work for the dates during which Plaintiff was hospitalized, he needed to provide proper certification forms accounting for his absences following his discharge from the hospital (or else his FMLA request would likely be denied). (*Id*. at 7). Plaintiff emailed Judge Blackburn that day to explain the difficulty he was having completing his FMLA paperwork. (Doc. No. 43-2 at 8). On April 9, 2019, Plaintiff informed Hawkins via e-mail that he was "still waiting to speak to Dr." and that his "heart symptoms reoccur[red]" that weekend, which required him to check in to a medical facility. (*Id*. at 9). Plaintiff's FMLA Leave request was denied on April 9, 2019, and Plaintiff received a termination letter on April 10, 2019. (Doc. No. 43 at 7).

Defendant moved for summary judgment on two grounds: i) because Defendant is not Plaintiff's employer, and ii) because Plaintiff's claims fail on the merits. (Doc. No. 43 at 1–2). In the R&R, the Magistrate Judge recommends granting the motion for summary judgment because i) as a member of the personal staff of Judge Blackburn (an elected official), Plaintiff falls outside the protections of Title VII and the FMLA; ii) no record evidence supports Plaintiff's Title VII and THRA racial discrimination claims; iii) Plaintiff's lack of supporting evidence for his FMLA claim is fatal to that claim; and iv) Plaintiff has abandoned his disability discrimination claims. (Doc. No. 55).

# **STANDARD OF REVIEW**

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id*. Fed. R. Civ. P. 72(b)(2) provides that a party may file "specific written objections" to a report and recommendation, and Local Rule 72.02(a) provides that such objections must be written and must state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made.[3] Objections must be specific; a general objection to the report and recommendation is not sufficient and may result in waiver of further review. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

The failure to properly, specifically, and timely object to a report and recommendation releases the Court from its duty to independently review the matter. *Frias v. Frias*, No. 2:18-cv-00076, 2019 WL 549506, at *2 (M.D. Tenn. Feb. 12, 2019). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object. Moreover, an objection that does nothing more than state a

---

[3] The Local Rule also provides that any objections must be accompanied by sufficient documentation including, but not limited to, affidavits, pertinent exhibits, and if necessary, transcripts of the record to apprise the District Judge of the bases for the objections. Also, a separately filed supporting memorandum of law must accompany the objections. Local Rule 72.02(a). Plaintiff's Objections do not comport with these requirements, but because the Court views the filings of *pro se* litigants with more leniency than it does the filings of represented litigants, the Court will not reject Plaintiff's Objections out of hand. However, the Court will note that because Plaintiff's filings (that is, the Objections to the R&R, as well as Plaintiff's responses to the summary judgment motion) are not supported by affidavits or any citations to the record, the Court can only give these filings their (limited) appropriate weight, as discussed further below.

disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context." *Frias*, 2019 WL 549506, at *2 (internal citations and quotation marks omitted). The district court is not required to review, under a *de novo* or any other standard, those aspects of the report and recommendation to which no objection is made. *Ashraf v. Adventist Health System/Sunbelt, Inc.*, 322 F. Supp. 3d 879, 881 (W.D. Tenn. 2018); *Benson v. Walden Security*, No. 3:18-cv-0010, 2018 WL 6322332, at *3 (M.D. Tenn. Dec. 4, 2018). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *Id.*

To the extent that an objection is made, pursuant to Fed. R. Civ. P. 72(a) the Court may modify or set aside any part of a Magistrate Judge's Order on a non-dispositive matter that is clearly erroneous or is contrary to law. The "clearly erroneous" standard applies only to factual findings, while legal conclusions are reviewed under the "contrary to law" standard. *Norfolk Cty Retirement Sys. v. Community Health Sys., Inc.*, No. 3:11-cv-00433, 2019 U.S. Dist. LEXIS 112291, 2019 WL 3003647, at * 1 (M.D. Tenn. Apr. 19, 2019); *Equal Emp't Opportunity Comm'n v. Burlington Northern & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 605 (W.D. Tenn. 2009). This standard is deferential, and mere disagreement with the Magistrate Judge and/or an assertion that the Magistrate Judge should have ruled differently does not rise to a clear error of fact or a decision contrary to law. *See Shabazz v. Schofield*, No. 3:13-CV-00091, 2014 U.S. Dist. LEXIS 163642, 2014 WL 6605504, at *1 (M.D. Tenn. Nov. 19, 2014) ("The Court is not empowered to reverse the magistrate judge's finding simply because this Court would have decided the issue differently."). When examining legal conclusions under the contrary to law standard, a court may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in

the Constitution, statutes, or case precedent. *Vanderbilt Univ. v. Scholastic, Inc.*, 321 F. Supp. 3d 830, 832-33 (M.D. Tenn. 2018).

## DISCUSSION

Plaintiff raises eight objections to the R&R. The Court will address each in turn.[4] As an initial matter, the Court notes that while it will grant Plaintiff the leniency it customarily affords *pro se* litigants some leniency when viewing objections to an R&R, even a good deal of leniency here would not be enough for Plaintiff, because he generally fails to state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made—let alone explain why any objection to such portion should be sustained.

1. **"Judge Blackburn provided Brisbane with on the job training – <u>not true</u> my training was done by Metro Police Academy located at 2715 Tucker Rd. Nashville TN 37218." (Doc. No. 61 at 1).**

The Court will liberally construe this objection to be an objection to the R&R's finding that Plaintiff falls outside the protections of Title VII and the FMLA because he was the "personal staff" of an elected official. Plaintiff has not provided any evidence supporting his contention that his training was entirely done by Metro Police Academy beyond the photographs of the Metropolitan Government Police Training Academy attached to his Objections and an unsworn statement by Plaintiff that he reported to the Metro Police Academy from 2007-2019 "as metro employee." (Doc. No. 61 at 7–11). But even if the Court were to accept as true that Plaintiff was trained by the Metro Police Academy, that fact alone is not enough for Plaintiff to meet his burden

---

[4] Plaintiff numbers his objections in a non-chronological order, with some of the objections lacking numbering. For the sake of clarity, the Court will re-number the objections one through eight beginning with the first objection on page one (and will recount the entire substance of each objection in full so as to not cause any confusion).

(which Defendant successfully shifted to him, as Plaintiff nowhere disputes) to raise a genuine issue as to whether an employee is a member of the "personal staff" of an elected official (from *Birch v. Cuyahoga Cty. Prob. Ct.*, 392 F.3d 151, 157–58 (6th Cir. 2004)) renders Title VII and the FMLA inapplicable to Plaintiff. Indeed, Plaintiff makes no legal argument at all regarding the applicability of the "personal staff" exception to his claims in relation to his alleged job training by Metro. Therefore, Plaintiff's first objection fails to reveal anything in the R&R that is clearly erroneous or is contrary to law, and it therefore is overruled.

**2. "Metro Government paid a portion of Brisbane's salary and administered benefits. State of Tennessee also paid a portion of Brisbane salary – not true. Metro paid all for year before termination." (Doc. No. 61 at 1).**

The Court again will liberally construe this objection to be an objection to the R&R's finding that Plaintiff falls outside the protections of Title VII and the FMLA because he was the "personal staff" of an elected official.

Defendant establishes a number of other reasons (including the undisputed fact that Judge Blackburn appointed Plaintiff as her Court Officer, thus indicating that Judge Blackburn held the power to appoint Plaintiff as her Court Officer) that support the conclusion that the "personal staff" exemption applies to Plaintiff's Title VII and FMLA claims. (Doc. No. 43 at 11). This objection is to the effect that the R&R nevertheless was wrong to reach this conclusion.

This objection is without merit. To begin with, Plaintiff does not provide any evidence regarding which entity paid Plaintiff's salary; thus, the Court cannot accept as true Plaintiff's bare assertion that Metro paid all of his salary during the year before he was terminated. In any event, whether the Metro Government or the State of Tennessee paid Plaintiff's salary, Plaintiff has not made any legal argument that this fact would in any way impact the applicability of the "personal staff" exemption. Nor can the Court, on its own, find that the source of Plaintiff's salary has any

impact on the applicability of this exemption. Therefore, Plaintiff's second objection fails to reveal anything in the R&R that is clearly erroneous or is contrary to law, and it therefore is overruled.

3. **"The decision as to terminate Brisbane's employment following the denial of his FMLA leave was Judge Blackburn – <u>not true</u>. I never heard or received any [sic] in writing from Judge Blackburn. Metro employee Tammy Howard was the one that told me that I was termination [sic] and if that the case, it is illegal for a third party person to terminate you and it illegal for third party to know before the person being terminate." (Doc. No. 61 at 1–2).**

Continuing to liberally construe this objection, the Court construes it as another objection to the R&R's finding that Plaintiff falls outside the protections of Title VII and the FMLA because he was the "personal staff" of an elected official. One of the six non-exhaustive factors set out in *Birch* for determining whether an individual is part of the "personal staff" of an elected official is "whether the elected official has plenary powers of appointment and removal." *Birch*, 392 F.3d at 158. Plaintiff makes no legal argument in connection with his assertion of fact that Judge Blackburn did not make the decision to terminate him, and even when viewing this *pro se* Plaintiff's objection with leniency, the Court cannot connect the dots such that this objection carries any weight. Plaintiff's assertion here (that he did not hear from Judge Blackburn *personally* that he was terminated) does nothing to establish that it was not Judge Blackburn who made the decision to terminate Plaintiff. Even if a member of Human Resources (rather than Judge Blackburn personally) had delivered the news that an employee had been terminated, that would not be inconstant with (let alone contradictory to) a finding that Judge Blackburn held such powers of removal. So Plaintiff does nothing to *show* that Judge Blackburn did not make the decision to terminate him. Furthermore, Defendant does not actually contend, and the Magistrate Judge did not find, that Judge Blackburn *actually made*—as opposed to had *plenary powers to make*, which

is what is relevant here[5]—the decision to terminate Plaintiff. This fact (or, perhaps, non-fact) thus was not even grounds on which the R&R based its finding that the "personal staff" exception applies.[6] Therefore, this objection reveals neither a clearly erroneous finding of fact (as to whether Judge Blackburn terminated Plaintiff) nor a conclusion contrary to law in the R&R, and thus it is overruled.

4. **"I was never an employee of the 20th district. I was <u>never</u> sworn in. I was hired at Metro owned build [sic] <u>not</u> property own by Judge Blackburn. 1415 Genesco Park Murfreesboro Pike Nashville TN 37217 – own by Metro Government. I was told I was hired to be a Metro employee work for the Metro court office of Division III." (Doc. No. 61 at 2).**

Continuing to liberally construe this objection, the Court construes it as yet another objection to the R&R's finding that Plaintiff falls outside the protections of Title VII and the FMLA because he was the "personal staff" of an elected official. Plaintiff does not provide any record evidence to support his assertion that he was never an employee of the 20th Judicial District, was never sworn in, and was hired at a Metro-owned building. And even if these assertions were true, Plaintiff makes no argument as to what finding in the R&R these assertions would undermine. Nor is the Court permitted to make, on its own, any such argument for Plaintiff. Thus, this objection reveals neither a clearly erroneous finding of fact nor a conclusion contrary to law in the R&R, and thus it is overruled.

---

[5] This *Birch* factor does not involve whether the elected official *actually* terminated the relevant employee, but rather involves whether the official had plenary *powers* to do so—and Plaintiff does not raise any argument suggesting that Judge Blackburn lacked such powers. And as noted above, Defendant has pointed to evidence more than adequate to support the R&R's conclusion that Judge Blackburn in fact did have such powers.

[6] For this reason it is quite a stretch for the Court to construe this objection as a proper objection to a specific finding in the R&R (as the Court has done out of an abundance of leniency towards Plaintiff).

5. **"On two occasion Judge Holmes made reference to 2021 cases in her report. My case was filed in 2019. 2021 cases can <u>not</u> be use in my case (due to date)." (Doc. No. 61 at 2).**

Though the Court recognizes why a *pro se* litigant might think that only legal precedent dating prior to the filing of a Complaint is controlling, such is not the case. *See*, *e.g., Gosnell v. Califano*, 625 F.2d 744, 745 (6th Cir. 1980); *Shamie v. City of Pontiac*, 620 F.2d 118, 119 (6th Cir. 1980). In any event, the R&R cites only one case that was decided in 2021 (*Jordan v. Mathews Nissan, Inc.*, 2021 WL 1967562 at *17 (M.D. Tenn. May 17, 2021)), and Plaintiff does not raise any specific disagreement with the parenthetical citation to this case included in the R&R. This objection, like the others, reveals nothing in the R&R that is a clearly erroneous finding of fact or a conclusion contrary to law, and thus it is overruled.

6. **"Judge Holmes was dismissive of my second doctor's excuse. The second doctor excuse is protected by HIPAA. All my doctor letter in this case are protected by the HIPAA Act." (Doc. No. 61 at 2).**

This objection contains two assertions: i) that the Magistrate Judge "was dismissive of" Plaintiff's "second doctor's excuse"[7], and ii) that this doctor's excuse is protected by HIPAA

---

[7] Plaintiff does not indicate the document to which he is referring here as the "second doctor's excuse." Nor does Plaintiff provide any additional context from which the Court can easily infer what Plaintiff is referring to by the "second doctor's excuse." Based on the Court's best reading of the facts as laid out by Defendant (and accepted as true for purposes of reviewing the R&R, as explained above), the Court's best inference is that Plaintiff is referring here to the April 3, 2019 Certification of Healthcare Provider (with the "first doctor's excuse" being the certification of health care provider submitted to Hawkins on March 24, 2019 that was filled out by Plaintiff and not by Plaintiff's doctor). (Doc. No. 43 at 6). But the Court cannot be certain that this doctor's note is what Plaintiff is referring to here as the "second doctor's excuse," as there was allegedly an earlier doctor's note, obtained by Plaintiff on or about March 5–7, 2019, that Plaintiff indicated he had "problems uploading" and was never provided to Judge Blackburn. (Doc. No. 43 at 4). If this note is instead understood as the "first doctor's excuse," that would in turn make the "second doctor's excuse" the form submitted to Hawkins on March 24, 2019. Suffice it to say, it is unclear which document Plaintiff refers to here to be the "second doctor's excuse," and the reference to it gets Plaintiff nowhere. The Court's above analysis and conclusion remains the same irrespective of any "second doctor's excuse."

(which the Court understands to refer to the Health Insurance Portability and Accountability Act, generally known to establish certain standards to protect against the disclosure of patient health information). First, the Court is unable to discern where in the R&R the Magistrate Judge "dismisses" any documentation provided by Plaintiff's medical provider. As stated above, "vague" contentions like this are treated as "a complete failure to object." *Frias*, 2019 WL 549506, at *2. Second, Plaintiff makes no argument regarding the relevance of HIPAA to his claims or to the R&R's findings, and to the extent that Plaintiff essentially implies an argument, the argument is without merit.[8] This objection, like the others, reveals nothing in the R&R that is either a clearly erroneous finding of fact or a conclusion contrary to law, and thus it is overruled.

7. **"Even though the politicians were smart enough to put articles in place to protect themselves when violating the Title VII I argue that 'The Real' Title VII take president [sic] when Title VII is wrongful and harmfully violated." (Doc. No. 61 at 3).**

It appears to the Court that this objection is not a proper objection to any particular finding in the R&R, but instead is an expression of a general disagreement with Title VII. As discussed above, the Court will only review any portions of the report and recommendation to which a proper objection is made. And even if the Court did undertake any such review, it is obvious that it reveals neither a clearly erroneous finding of fact nor a conclusion contrary to law in the R&R. This objection therefore is overruled.

---

[8] Specifically, arguably Plaintiff here implies something along the lines of, "I did not have to show the court any documentation protected by HIPAA." Maybe so, but that does not change the fact that if (as in the present case) a plaintiff relies on the existence of such documentation to support the claims, plaintiff's claims may prove unsupported if the plaintiff chooses not to disclose such documentation to the court.

8. **"I also object and challenge that at the time and date of my termination that the opposing party had no law at the date to support their violation of my doctor letter, FMLA, civil rights. (No laws that support them whatsoever)."** (Doc. No. 61 at 3).

This objection falls under the category of a "vague" assertion that the Court will treat as "a complete failure to object." *Frias*, 2019 WL 549506, at *2. Even viewing this objection with leniency, the Court cannot determine what Plaintiff means by "the opposing party had no law . . . to support their violation of my doctor letter," nor can the Court identify any specific finding in the R&R to which Plaintiff objects by making this statement. This objection, like all of the others, reveals nothing in the R&R that is either a clearly erroneous finding of fact or a conclusion contrary to law, and thus it is overruled.

## CONCLUSION

For the reasons discussed herein, the Court overrules Plaintiff's Objections and adopts the Magistrate Judge's Report and Recommendation. (Doc. No. 52). Defendants' Motion for Summary Judgment (Doc. No. 42) is **GRANTED**. This Order shall constitute final judgment for purposes of Fed. R. Civ. P. 58, and the Clerk is directed to close the file.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE